UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRY, INC.,<br>        Plaintiff,<br>v.<br>THIRTY-ONE GIFTS, LLC,<br>        Defendant. | Case No. 17-cv-03074-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. Nos. 7, 15 |

## INTRODUCTION

Pierry, Inc. filed a Complaint against Thirty-One Gifts, LLC, asserting various state law claims arising out of an alleged breach of contract and requesting declaratory relief. *See* Compl., Dkt. No. 1. Thirty-One Gifts answered and filed a Counterclaim against Pierry, asserting various state law claims. *See* CC, Dkt. No. 8.

Pending before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Thirty-One Gifts moves to dismiss the second claim for relief asserted in the Complaint. *See* TOG Mot., Dkt. No. 7. Pierry filed an Opposition (Pierry Opp'n, Dkt. No. 10), and Thirty-One Gifts filed a Reply (TOG Reply, Dkt. No. 13). Pierry also moves to dismiss all but one of the claims asserted in the Counterclaim and to strike an exhibit to the Counterclaim. *See* Pierry Mot., Dkt. No. 15. Thirty-One Gifts filed an Opposition (TOG Opp'n, Dkt. No. 22), and Pierry filed a Reply (Pierry Reply, Dkt. No. 23). The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 28, 2017 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Thirty-One Gifts' Motion and **GRANTS IN PART** Pierry's Motion for the following reasons.

**BACKGROUND**

On a motion to dismiss, the Court accepts as true the well-pleaded allegations of the Complaint and Counterclaim, and construes them in the light most favorable to each non-moving party.

Pierry provides software solutions and support for companies in the information technology, finance, accounting, engineering and government industries. Compl. ¶ 3; CC ¶¶ 9-10 ("Pierry is a reseller of Salesforce Marketing Cloud Software (SFMC) applications and licenses, and advertises itself as one of the largest SFMC implementers, integrators, and consultants in the world."). Thirty-One Gifts sells consumer products directly to consumers and through consultants. CC ¶ 4. Its sales are largely sourced and fulfilled online. *Id.* ¶ 5. Thirty-One Gifts relies heavily upon its electronic platforms to advertise, communicate with consultants and customers, receive and confirm orders, and communicate about shipping; disruptions of these services result in substantial harm to Thirty-One Gifts. *Id.* ¶¶ 5-6.

Pierry and Thirty-One Gifts entered into a Master Services Agreement ("MSA") on September 1, 2016; they also entered into several Statements of Work ("SOWs"). Compl. ¶¶ 4, 14; *see also id.*, Ex. 1 (MSA), Ex. 2 (September 1, 2016 SOW), Ex. 3 (February 2, 2017 SOW); CC ¶¶ 11, 20. Pierry provided a software platform to Thirty-One Gifts, as well as access to the SFMC for customer data. Compl. ¶ 8; September 1, 2016 SOW ("Project Name. Implementation of [SFMC] Professional Edition"); February 2, 2017 SOW ("Project Name. Corporate Edition Upgrade—[SFMC]"); CC ¶ 21. Pierry prepaid for access to the Salesforce Cloud through January 31, 2019 in reliance upon Thirty-One Gifts' obligations under the terms of the MSA and SOWs. Compl. ¶ 11.

The MSA required Pierry to perform its obligations "in a professional and workmanlike manner in accordance with generally accepted industry standards." CC ¶ 14 & MSA § 5.2. It reflected the parties' agreement that all content created for the benefit of Thirty-One Gifts during the course of the MSA is the property of Thirty-One Gifts, regardless of who created the content. CC ¶ 13. This included email templates, newsletters, distribution lists, links, images, graphs and photos." *Id.* & MSA § [3].2. The MSA also required Thirty-One Gifts to reimburse Pierry for all

2

"reasonable, pre-approved travel and pre-approved out-of-pocket expenses incurred in connection with" the performance of its services. CC ¶ 15 & MSA § 2.1. In the "Liability Limitations" section of the MSA, the parties agreed to limit liability "arising out of or related to the agreement, whether in contract, tort or under any other theory of liability" to the "aggregate sums paid by" Thirty-One Gifts under the MSA in the 12 months preceding the incident giving rise to liability, but in no event shall such liability be less than the amount owed to Pierry for fees and expenses, plus interest and collection costs. CC ¶ 16 & MSA § 7.1. Thirty-One Gifts' exclusive remedy for any breach of § 5.2 of the MSA was re-performance of the services; if Pierry could not re-perform the services as warranted within 30 days of receipt of written notice of breach, Thirty-One Gifts was entitled to recover the fees paid to Pierry for the deficient services. CC ¶ 17 & MSA § 7.1. The MSA also excluded either party from recovering "ANY INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, EXEMPLARY, OR SPECIAL DAMAGES OF ANY KIND OR NATURE HOWEVER CAUSED (INCLUDING BUT NOT LIMITED TO LOST PROFITS AND LOSS OF GOOD WILL), WHETHER IN CONTRACT, TORT OR UNDER ANY THEORY OF LIABILITY, WHETHER OR NOT THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES." MSA § 7.2 (emphasis in original).

The September 1, 2016 SOW included an "ongoing support retainer" of 125 hours per month for six months and gave Thirty-One Gifts the "option of reassessing total number of monthly hours needed after 6 months." CC ¶ 23 & September 1, 2016 SOW at 1. It also specified the parties would "discuss reducing the hourly rate for the remainder of the contract year" if Thirty-One Gifts maintained the number of hours for the six months remaining on the contract. CC ¶ 23 & September 1, 2016 SOW at 2. It did not contain a requirement for Thirty-One Gifts to pay for additional hours. *Id.*

Thirty-One Gifts subsequently purchased an upgrade of SFMC "with initial need of utilizing MobilePush functionality." February 2, 2017 SOW; CC ¶¶ 25-26. Thirty-One Gifts alleges the parties contemplated that "Pierry would implement the functionality, and that any theoretical overages relative to the number of messages sent using that functionality would be forecasted by Pierry, prospectively planned with Thirty-One Gifts, and subject to Thirty-One

3

Gifts' agreement." CC ¶ 26.[1] "Pierry did not take the time to understand Thirty-One Gifts' business in order to implement the MobilePush functionality. Thirty-One Gifts requested training on the product on multiple occasions, but Pierry responded that it did not have the resources in place to assist. The MobilePush Functionality has not been implemented." *Id.*

In March 2017, without notice or explanation, Pierry closed the office that had serviced the Thirty-One Gifts account; the new representatives Pierry assigned to Thirty-One Gifts had little knowledge of the account or Pierry's obligations to Thirty-One Gifts. *Id.* ¶¶ 30-32. Pierry refused Thirty-One Gifts' repeated requests to educate Pierry's new personnel on the business. *Id.* ¶¶ 33-34. Pierry's performance of the MSA and SOWs materially and dramatically worsened after the new representatives took over the account. *Id.* ¶¶ 32, 35-36. Despite receiving advanced planning and help from Thirty-One Gifts in planning a major "flash sale" on April 26, 2017, Pierry only sent emails to 15% of the list of customers Thirty-One Gifts had asked Pierry to contact about the sale. *Id.* ¶¶ 37-52. Pierry eventually admitted Thirty-One Gifts was "absolutely correct that the [lists Pierry used are] not inclusive of all Customers. We sincerely apologize for this misstep, and are working to correct this right away." *Id.* ¶ 53. Pierry never managed to correct its problems; ten hours after the target time, Pierry had only managed to send emails to 50% of the distribution list. *Id.* ¶¶ 54-55. Pierry's failure cost Thirty-One Gifts to lose at least $2.2 million of revenue. *Id.* ¶¶ 56-57.

The MSA does not grant either party the right to terminate the contract and does not list a termination date for the MSA. MSA § 8. Instead, it states the term of the MSA continues for the terms specified in the SOW. *Id.* § 8.1. Nevertheless, concluding that Pierry was not capable of performing the needs of its account, Thirty-One Gifts sent Pierry a letter accusing Pierry of materially breaching the MSA and SOWs, terminating the contract, and repudiating past-due and future payment obligations. Compl. ¶ 10; CC ¶¶ 58-59 & Ex. A (May 12, 2017 Termination Notice).

Pierry responded to the Termination Notice by threatening to lock Thirty-One Gifts from

---

[1] The SOW does not reflect these contemplations. *See* February 2, 2017 SOW.

4

the SFMC application that Thirty-One Gifts owned and prevent Thirty-One Gifts from recovering its property relating to the account. CC ¶ 60; *see* February 2, 2017 SOW § 6a (specifying Thirty-One Gifts owns the application, as well as all related code and maintenance).

Pierry alleges it performed its obligations under the MSA and SOWs. Compl. ¶¶ 10, 15; *see also id*. ¶¶ 5, 8 (Pierry performed "substantial services" for Thirty-One Gifts). Pierry demanded payment of all past-due invoices in the amount of $289,772, plus interest. *Id*. ¶ 9. Thirty-One Gifts refused to pay Pierry. *Id*. ¶¶ 9, 16, 21. In addition to Thirty-One Gifts' failure to pay, Pierry alleges Thirty-One Gifts breached the MSA by failing to provide dedicated on-site technical support "and other resources," including customer information Pierry needed to perform the services it was providing to Thirty-One Gifts. *Id*. ¶¶ 16, 21. Pierry has been damaged in an amount no less than $289,722, plus interest, as provided by Section 2.2 of the MSA. *Id*. ¶¶ 17, 22. Pierry asserts a claim for breach of contract, a breach of the implied covenant of good faith and fair dealing, and a claim for declaratory relief.

Thirty-One Gifts alleges Pierry's invoiced amount "was not an amount of money" owed under the MSA or the SOWs; rather, it resulted "primarily from extra work hours Pierry purportedly worked ('overages') and for which Pierry demanded compensation—despite the absence of any contractual right to the payments or agreement from Thirty-One Gifts." CC ¶ 61. Pierry's President and CEO Josh Pierry had informed Thirty-One Gifts in March 2017 that Thirty-One Gifts "had no responsibility for paying any alleged overages." *Id*.

On May 19, 2017, Pierry locked Thirty-One Gifts out of its SFMC software application and account. *Id.* ¶ 63. This significantly impeded Thirty-One Gifts' ability to conduct its business by preventing communications with consultants and direct customers, and preventing its consultants from communicating with their customers; this also prevented Thirty-One Gifts from confirming enrollment of new consultants. *Id*. ¶¶ 64-66. Pierry refused to release the lock absent full payment by Thirty-One Gifts. *Id*. ¶ 68. Thirty-One Gifts continues to be locked out of its SFMC account. *Id*. ¶ 69. It has lost more than $100,000 in revenue as a result. *Id*. ¶ 70.

Thirty-One Gifts asserts counterclaims for breach of contract; declaratory judgment; violation of California's Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("Section

5

1   502"); conversion; intentional interference with prospective economic advantage; breach of the
2   implied covenant of good faith and fair dealing; and violation of California's Unfair Competition
3   Law ("UCL"), Cal. Bus. & Profs. Code § 17200.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend

1  for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

2  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

3  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

4  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

5  *Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.     Thirty-One Gifts' Motion to Dismiss**

Thirty-One Gifts moves to dismiss only Pierry's claim for breach of the implied covenant of good faith and fair dealing.

A claim for breach of the implied covenant of good faith and fair dealing is not based on the breach of an explicit contractual term. *See Careau v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1394 (1990) ("A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."), *as modified on denial of reh'g* (Oct. 31, 2001). The covenant is "implied by law in every contract," and "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc*., 24 Cal. 4th 317, 349 (2000). But while a claim for breach of the implied covenant is distinct from a claim for breach of an actual contractual term, "a claim that merely re-alleges [a] breach [of a contractual term] as a violation of the covenant is superfluous." *Id*. at 352; *see also id*. at 327 ("[A]lthough any breach of the actual terms of an employment contract also violates the implied covenant, the measure of damages for such a breach remains solely contractual. Hence, where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."); *see also Careau*, 222 Cal. App. 3d at 1395 (if allegations for breach of implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

In evaluating whether a claim for breach of the implied covenant duplicates a breach of contract claim and therefore is superfluous, courts cannot analyze the claims mechanically. These

two types of claims "'will always be based on the same facts [since] a certain set of circumstances gives rise to a lawsuit' and 'will always seek the same remedy [since] the same remedies are available for both claims . . . the challenge brought by *Careau* and its progeny is to distinguish two claims based on the same facts.'" *Free Range Content, Inc. v. Google, Inc.*, 2016 WL 2902332, at *15 (N.D. Cal. May 13, 2016) (quoting *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 851-53 (C.D. Cal. 2004); alterations in original). Here, in both the breach of contract and the breach of the implied covenant claims, Pierry alleges Thirty-One Gifts breached the MSA by failing to make payments required under the MSA. Compl. ¶¶ 16, 21. Pierry also alleges in both claims that by failing to dedicate on-site technical support and provide other resources, including customer information Pierry needed to perform services under the MSA, Thirty-One Gifts frustrated Pierry's right to obtain the benefits Pierry was entitled to receive under the MSA. *Id.* (both). For both claims, Pierry seeks relief in an amount to be proved at trial, and no less than $289,722.20, plus interest as provided by the MSA. *Id.* (both). Based on a reading of the Complaint, Pierry alleges the same breaches, relies on the same facts, and seeks the same damages in both the breach of contract and the breach of the implied covenant claims. As written, the claims appear duplicative.

Pierry nonetheless argues the claims are distinguishable because a fact-finder could conclude that Thirty-One Gifts had no contractual duty to provide on-site support but also find the failure to do so was a breach of the implied covenant. *See* Pierry Opp'n at 2, 9-11 (relying on *Daly v. United Health Ins. Co.*, 2010 WL 4510911 (N.D. Cal. Nov. 1, 2010)). Pierry represents that in *Daly*, Judge Koh quoted *Celador* for the proposition that an implied covenant claim is "distinguishable" when "even if the plaintiffs fail on their breach of contract claim, the plaintiffs could prevail on their breach of the implied covenant claim." Pierry Opp'n at 10. But Pierry fails to examine the reasoning that led Judge Koh to conclude the claims in *Daly* were, in fact, distinguishable. In *Daly*, the breach of contract claim was based on plaintiff being terminated for cause, while the breach of the implied covenant claim alleged the cause offered for plaintiff's termination was pretextual and that he was fired so his employer could avoid paying him the commissions he was owed. 2010 WL 4510911, at *6. In support of his implied breach claim, the

plaintiff also alleged his employer had terminated him without a good faith investigation into his compliance with the contract. *Id.* Judge Koh found the implied covenant claim was based on "clearly a different, albeit somewhat inconsistent, breach than the breach of contract claim. Thus, even if Plaintiff fails to prove the Agreement did not justify Defendant in terminating Plaintiff 'for cause,' Plaintiff could still recover on his breach of the implied covenant" claim. *Id.* Pierry's Complaint does not allege clearly different breaches—on the contrary, it alleges identical breaches give rise to both claims: failure to pay, failure to provide dedicated support, and failure to provide necessary information. Compl. ¶¶ 16, 21. Pierry *argues* a fact-finder might disagree with Pierry's allegations that Thirty-One Gifts had a contractual obligation to provide certain services but still agree that failure was a breach of the implied covenant. But the Complaint pleads no facts showing the on-site support and resources are separate obligations not stated in the contract, the absence of which frustrated Pierry's right to receive the benefits of the contract. *See* Compl. As such, the Complaint does not state a claim for breach of the implied covenant that is distinguishable from Pierry's breach of contract claim. Pierry's implied covenant claim is therefore redundant.

Based on the foregoing, the Court grants Thirty-One Gifts' Motion to Dismiss Pierry's claim for breach of the implied covenant of good faith and fair dealing with leave to amend.[2]

**B.  Pierry's Motion to Dismiss**

Pierry moves to dismiss each of Thirty-One Gifts' counterclaims except for the declaratory judgment claim, as well as any claim for damages that exceeds the limitation of liability the parties agreed to in the MSA. The Court addresses each of Pierry's arguments in turn.

1.  Contract-based Claims

MSA § 7.1 requires Thirty-One Gifts to provide Pierry with notice of any breach of MSA § 5.2 and a 30-day opportunity to cure. Pierry argues Thirty-One Gifts does not state any claim sounding in contract because it fails to allege it performed this condition precedent or that it was

---

[2] Because the Court finds the claim is superfluous, it does not address Thirty-One Gifts second argument that Pierry seeks to add new material terms to the parties' contract. *See* TOG Mot. at 5-6.

9

excused from doing so. Pierry Mot. at 4-5. Thirty-One Gifts responds that the notice-and-opportunity-to-cure provision applied only to breaches of the warranties stated in MSA § 5.2, and did not apply to any other breaches of the MSA, SOWs, or to claims based on violations of statutes or torts. TOG Opp'n at 5-7. In its Reply, Pierry contends Thirty-One Gifts' reading of MSA § 7.1 is too narrow, and that the MSA required Thirty-One Gifts to provide notice-and-opportunity-to-cure for *any* breach of Pierry's duty to perform under the MSA whether the breach arose in tort, contract, or otherwise. Pierry Reply at 2-3.

In MSA § 5.2, Pierry warranted that the "Services" would be performed in a professional and workmanlike manner. The MSA defines "Services" as "the implementation, integration, consulting, and/or similar services described in a Statement of Work[.]" MSA § 1. Thirty-One Gifts' breach of contract claim is based on a number of material breaches, including "[f]ailing to perform in a professional and workmanlike manner;" "[f]ailing to perform within generally accepted industry standards;" closing the Cleveland office without ensuring Pierry could perform its contract obligations competently from another location; failing to respond to inquiries in a timely manner; failing to timely send scheduled emails; failing to execute email requests properly; and failing to execute contractual obligations surrounding the April 2017 flash sale. *See* CC ¶ 76. Each of these allegations describes a failure to perform activities falling squarely within the type of Services that Pierry was hired to provide to Thirty-One Gifts. As such, MSA § 7.1 limits Thirty-One Gifts' remedy to re-performance of the services, or if Pierry is unable to re-perform the services within 30 days of receipt of written notice of breach, to the fees Thirty-One Gifts has paid to Pierry for the deficient services.

Although it styled it as a Notice of Termination, Thirty-One Gifts did provide notice of breach to Pierry on May 12, 2017. *See* Notice of Termination (listing material breaches and resulting harm). Thirty-One Gifts did not provide Pierry with an opportunity to cure; instead, it purported to terminate the relationship "effective immediately." *Id.* Thirty-One Gifts acknowledged the exclusive remedy imposed by MSA § 7.1, but stated that section was "inoperative when the breached performance is incapable of re-performance within thirty-days – plainly a biannual flash sale is incapable of re-performance thirty days later." *Id.* Assuming this

10

is sufficient to excuse Thirty-One Gifts' failure to provide notice and opportunity to cure, Thirty-One Gifts does not allege these facts in the Counterclaim. To the extent the breach of contract claim is based on Pierry's failure to perform Services as defined in the MSA, it is dismissed for failure to plead Thirty-One Gifts' compliance with the condition precedent of providing notice and opportunity to cure in compliance with MSA §§ 5.2 and 7.1, and failure to plead Pierry's inability to cure.

But Thirty-One Gifts also alleges Pierry breached the MSA by failing to return Thirty-One Gifts' property, blocking Thirty-One Gifts' access to its property (including the SFMC application), and demanding payment of monies to which Pierry was not contractually entitled. The conduct described in these allegations does not fall within the scope of "Services" Pierry was hired to provide, and thus is not warranted by MSA § 5.2. Thirty-One Gifts was not required to provide notice and opportunity to cure those deficiencies under MSA § 7.1.

Thirty-One Gifts also alleges Pierry breached its implied duty of good faith and fair dealing by using its access to Thirty-One Gifts' data to force Thirty-One Gifts to pay it a ransom. CC ¶¶ 112-20. This does not fall within the MSA's definition of Services, and is not subject to the notice-and-opportunity-to-cure requirement. But, just as Pierry's breach of the implied covenant claim was entirely duplicative of its breach of contract claim, Thirty-One Gifts' implied covenant counterclaim is entirely duplicative of a portion of its breach of contract claim. The same reasons the Court articulated for dismissing Pierry's implied covenant claim require dismissal of Thirty-One Gifts implied covenant counterclaim.

Pierry's Motion to Dismiss the breach of contract and breach of the implied covenant claims is granted in part, with leave to amend.

2. Penal Code § 502[3]

Thirty-One Gifts alleges Pierry violated California Penal Code sections 502(c)(1)-(5) and (7). This statute prohibits any person from knowingly accessing and without permission using any

---

[3] The owner or lessee of a computer or data who suffers damage or loss by reason of a violation of Section 502(c) may bring a civil action against the violator for compensatory damages and injunctive relief. Section 502(e)(1).

11

data, computer, computer system, or computer network in a variety of ways.[4] Pierry argues Thirty-One Gifts cannot state a claim for violation of Section 502 because the MSA gave Pierry permission to access the data in the SFMC and suspend its services upon Thirty-One Gifts' failure to pay. Pierry Mot. at 5-10. Thirty-One Gifts does not dispute this characterization of the MSA. However, the Counterclaim alleges that (1) the $289,772 demanded by Pierry were *not* delinquent fees, and (2) Pierry did not just suspend its services, but actively locked Thirty-One Gifts out of the SFMC and prevented Thirty-One Gifts from conducting its online business.[5] The MSA thus did not justify Pierry's conduct, as described in the Counterclaim.

Pierry next argues that merely blocking access does not constitute a "use" or "taking" under Section 502. *See* Pierry Reply at 5. "Use" includes "logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly."

---

[4] "(c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:
(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
(3) Knowingly and without permission uses or causes to be used computer services.
(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.
(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.
(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

[5] *See, e.g.*, CC ¶ 61 ("The $289,772.20 that Pierry demanded was not an amount of money that Thirty-One Gifts owed to Pierry under the MSA, the 2016 SOW, or the 2017 SOW. Instead, the sum of money resulted primarily from extra work hours Pierry purportedly worked ('overages') and for which Pierry demanded compensation – despite the absence of any contractual right to the payments or agreement from Thirty-One Gifts."), ¶ 64 ("Locking-out Thirty-One Gifts significantly impeded Thirty-One Gifts's ability to conduct its business."), ¶ 68 ("Pierry was determined to withhold Thirty-One Gifts' access to its property as leverage to obtain the sum of money it wanted."), ¶ 91 (Pierry used Thirty-One Gifts' account and SFMC without authorization and under false pretenses and deception; Pierry changed access to Thirty-One Gifts' accounts and applications, locking it out against its will, despite its demands for access), ¶ 92 (Pierry created an interruption of service).

*United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ("A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information."); *see also NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 966-67 (N.D. Cal. 2014) (recognizing pre-*Christensen* conflict, but finding Section 502 applies where a party uses permitted access for an unpermitted activity (following *People v. Childs*, 220 Cal. App. 4th 1079, 1104 (2013) ("It appears that subdivision (c)(5) may properly be applied to an employee who uses his or her authorized access to a computer system to disrupt or deny computer services to another lawful user."))). Pierry accuses Thirty-One Gifts of "gloss[ing] over the critical fact that the prevailing interpretation of the 'without permission' requirement of [Section 502] holds that a plaintiff fails to state a claim for relief absent facially plausible allegations of circumvention of a technical or code-based barrier that existed specifically to prevent access by the defendant" (Pierry Reply at 4) and urges the Court to "adopt the majority interpretation" articulated in a number of cases (*id*. at 5). While there indeed "was a split of authority in the Northern District of California as to what 'without permission' means under Section 502[,]" that split was resolved by the Ninth Circuit's opinion in *Christensen*, which held "that Section 502 only requires knowing access, not unauthorized access." *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017) ("[T]his Court will follow the Ninth Circuit's ruling that using valid login credentials and subsequently misusing the information obtained constitutes a Section 502 violation."). In light of *Christensen*, there is no conflict for the Court to address.

Finally, Pierry argues Section 502 is inapplicable because Pierry was hosting SFMC on its own cloud—not Thirty-One Gifts' platform. *See* Pierry Reply at 4. First, there is no such limitation in the language of Section 502—on the contrary, Section 502(c) addresses "any data, computer, computer system, or computer network" and "any data from a computer." It does not exclude from liability the owner of a platform of which a plaintiff is an authorized system or network user, or a platform on which a plaintiff's data is stored. Second, who owned the cloud is a fact that is not before the Court at this stage in the litigation. *See* Compl. ¶ 8 ("Pierry provided to Defendant TOG a software platform and access to the [SFMC] for Defendant TOG's customer data.").

13

As described above, the Counterclaim alleges Pierry (1) used Thirty-One Gifts' account, SFMC application, and internet protocols by (2) denying access to or interrupting Thirty-One Gifts' access to data and applications it needed to conduct its business (3) as leverage to force Thirty-One Gifts to pay a ransom it did not owe under the terms of the MSA or SOWs. Thirty-One Gifts alleges that neither the MSA, the SOWs, nor any other source of authority authorized that use. This is sufficient to state a claim under Section 502. *See Henry Schein*, 2017 WL 783617, at *5 (finding plaintiff stated Section 502 claim based on allegations that former employee logged onto computer system the day after her termination to access ordering and sales information, and "copied and/or made use" of the information without employer's permission). Pierry's Motion to Dismiss the Section 502 claim is denied.

### 3. Conversion, Intentional Interference with Economic Advantage, UCL

Pierry argues the counterclaims for conversion, intentional interference with prospective economic advantage, and UCL are all based on the Section 502 violation and therefore fall along with it. Pierry Mot. at 11-13. Setting aside the accuracy of Pierry's characterization of the counterclaims, the Court has found Thirty-One Gifts stated a claim for violation of Section 502. The Court accordingly denies the Motion to Dismiss these claims on this basis.

In addition, Pierry argues the UCL claim fails because the UCL does not apply to breaches of a private commercial contract between two sophisticated corporate parties. Pierry Mot. at 13-14; Pierry Reply at 7-8. The UCL "make[s] it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage[s] attorneys to undertake private enforcement actions." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000). The UCL may be used to vindicate the rights of individual consumers who are parties to a contract, but it is not generally appropriate for resolving sophisticated business finance issues. *See Rosenbluth Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1076-77 (2002) (fraudulent prong UCL claim not appropriate where customers of contract at issue "are sophisticated corporations, most in the Fortune 1000, each of which negotiates contracts individually with Rosenbluth and each of which presumably has the resources to seek damages or other relief from Rosenbluth should it choose to do so."); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.

App. 4th 115, 134-35 (2007) (affirming dismissal of fraudulent prong UCL claim: "[W]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." (citing *Rosenbluth*)); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 6638929, at *4 (N.D. Cal. Oct. 30, 2015) ("[T]he holdings of both *Linear Tech* and *Rosenbluth* (the case on which *Linear Tech* relied) turn less on the fact that the alleged victims in those cases were businesses, and more on the fact that these entities were sophisticated and individually capable of seeking relief. . . ."); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 866 (N.D. Cal. 2014) (dismissing fraudulent prong UCL claim by Cisco because it is a "sophisticated corporation" and not a member of the public itself). Another court in this District summarized,

> [T]he central issue presented under California law is whether the public at large, or consumers generally, are affected by the alleged unlawful business practice of defendants. The relative size of the plaintiff companies and whether or not there is a contract for the plaintiffs to rely upon is secondary to the analysis of whether, as a result of the alleged unfair or fraudulent business practice, consumers are adversely affected. The California UCL grants standing to companies of varying size, to defend the rights of the general consuming public against unfair and fraudulent business practices. . . . [T]he claim under California's UCL as currently pled is invalid as it fails to state a connection to the protection of the general public.

*In re Webkins Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010) (dismissing unfair and fraudulent UCL claim with leave to amend to set out factual connection to the general public or individual consumer's interest).

In its Opposition, Thirty-One Gifts argues Pierry's conduct harmed the general public by preventing Thirty-One Gifts' customers from learning about sales events, and preventing Thirty-One Gifts from communicating with its "consumer-consultants" and confirming their enrollment. TOG Opp'n at 13 (citing CC ¶¶ 64-67). The allegations Thirty-One Gifts references do not show its consumer-consultants or its consumers were injured within the meaning of the UCL—only that *Thirty-One Gifts* was significantly impeded in its ability to do business. Because the Court finds Thirty-One Gifts does not allege the public at large or consumers generally were injured by

Pierry's allegedly unlawful business practices, Pierry's Motion to Dismiss the UCL is granted, with leave to amend.

4. <u>Unavailable Damages</u>

The MSA limits either party's "liability arising out of or related to the agreement, whether in contract, tort or under any other theory of liability," to the aggregate sum paid by Thirty-One Gifts in the year preceding the complained-of incident. MSA § 7.1. It also precludes "liability for any indirect, incidental, punitive, consequential, exemplary, or special damages of any kind or nature however caused (including but not limited to lost profits and loss of goodwill), whether in contract, tort or under any theory of liability." *Id.* § 7.2. Pierry argues the liability limitation and special damages exclusion in the MSA are enforceable, and on that basis moves to dismiss the claim for damages in excess of the contractual limitations. Pierry Mot. at 14-16.

Pierry acknowledges that the contractual liability limitations in the MSA are subject to California Civil Code section 1668. *See* Pierry Mot. at 15 ("Except to the extent Civil Code section 1668 . . . limits their reach, paragraphs 7.1 and 7.2 of the MSA reflect the parties' intent to keep potential liability within reasonable boundaries, and to exclude precisely the type of special damages upon with TOG relies to inflate its prayer to more than $2 million."). Section 1668 declares contrary to the policy of the law "contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent." Under California law, "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability." *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 928 (N.D. Cal. 2015) (citations omitted).

Thirty-One Gifts alleges Pierry's conduct violated Penal Code Section 502, and that Pierry willfully injured it when it blocked Thirty-One Gifts' access to the SFMC in an attempt to force Thirty-One Gifts to pay money it did not owe under the MSA or SOWs. Thus, some of the conduct alleged in the Counterclaim, if established, would trigger the application of Civil Code section 1668. *See North Star Gas Co. v. Pac. Gas & Elec. Co.*, 2016 WL 5358590, at *17 (N.D. Cal. Sept. 26, 2016) (finding special damages waiver unenforceable with respect to claims

16

involving a willful or statutory injury within the meaning of Civil Code section 1668, but enforceable with respect to negligence claims); *FiTeq Inc. v. Venture Corp.*, 169 F. Supp. 3d 948, 955-56 (N.D. Cal. 2016) (limitation of liability clause unenforceable to the extent it would insulate defendants from fraud or willful injury, but beyond that, "the limitation holds"); *Civic Ctr. Drive Apts. Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1105-06 (N.D. Cal. 2003) (triable issue of fact existed as to whether consequential damages arose out of fraudulent conduct; accordingly, limitation of liability could be void against public policy whether underlying claim sounds in contract or it tort). But, as described above, some of the other conduct Thirty-One Gifts alleges in the Counterclaim appears to fall squarely within the Services warranted by MSA § 5.2 and subject to MSA § 7.1 and § 7.2.

To the extent Thirty-One Gifts' damages are based on "Services" or *negligent* conduct by Pierry, the Court finds, at this point, the limitations imposed by MSA § 7.1 and § 7.2 may apply. But to the extent Thirty-One Gifts claims damages based on willful injuries or violations of Penal Code Section 502, the Court finds, at this juncture, Thirty-One Gifts has pleaded facts sufficient to plausibly allege Section 1668 may invalidate the limitations of liability set forth in MSA § 7.1 and § 7.2, at least with respect to some claims. The Motion to Dismiss Thirty-One Gift's damages is accordingly denied.

### C. Pierry's Rule 12(f) Motion to Strike

Rule 12(f) allows a court "to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Pierry asks the Court to strike the Termination Notice attached to the Counterclaim on the ground the letter is immaterial and redundant. *See* Pierry Mot. at 16. Pierry references the letter in its Complaint. *See* Compl. ¶ 10 ("[O]n May 12, 2017, Defendant TOG sent a letter to Pierry refusing to make any payments to Pierry, and claiming that Pierry had materially breached the Parties' MSA and corresponding SOWs."). Pierry cannot plausibly argue the letter is immaterial when Pierry's own claims are based in part on the termination. Thirty-One Gifts also incorporates the Termination Notice by reference in its Counterclaim and alleges that, in response to that letter, Pierry threatened to lock Thirty-One Gifts out of the SFMC if Thirty-One Gifts did not pay $289,772.20 by the following

17

week.  *See* CC ¶¶ 59-60 & Termination Notice.  The Termination Notice details some of the allegations that Thirty-One Gifts reiterates in its Counterclaim, and expands upon others.  It is not immaterial to either the Complaint or Counterclaims, and it is not so redundant as to warrant striking.  *See also Capella*, 77 F. Supp. 3d at 858 ("Motion to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings.").  Pierry's Rule 12(f) Motion is denied.

## CONCLUSION

The Court (1) grants Thirty-One Gifts' Motion to Dismiss Pierry's claim for breach of the implied covenant of good faith and fair dealing, with leave to amend; (2) grants in part Pierry's Motion to Dismiss the counterclaim for breach of contract, with leave to amend, and otherwise denies Pierry's Motion to Dismiss; and (3) denies Pierry's Motion to Strike.

The parties shall file any amended pleadings no later than October 16, 2017.  Alternatively, within a week of this Order, the parties may file a stipulation to extend the deadline for filing amended pleadings until after the parties have engaged in Court-sponsored mediation.  *See* Joint Case Mgmt. Stmt. ¶ 12, Dkt. No. 32.

**IT IS SO ORDERED.**

Dated: September 25, 2017

MARIA-ELENA JAMES
United States Magistrate Judge